UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

Case No.:

YORIEL AMPARO
TEVIN BURKS
JASMINE FUENTES,
Plaintiffs,
v.
CLASSICA CRUISE OPERATOR
LTD., INC., a Foreign Profit
Corporation,
Defendant(s).
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, YORIEL AMPARO, TEVIN BURKS and JASMINE FUENTES, by and through undersigned counsel, hereby files this Complaint and Demand for Jury Trial and sues Defendant, CLASSICA CRUISE OPERATOR LTD., INC. (hereinafter referred to as "CLASSICA" or "Defendant"), and alleges as follows.

**PRELIMINARY ALLEGATIONS**

1. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00) exclusive of interest, costs and attorney's fees.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1333. Further, this matter is being filed in the United States District Court for the Southern District of Florida located in Broward County, Florida, as required by the forum-selection clause contained within the ticket contract issued by the Defendant. Upon knowledge and belief, CLASSICA is in possession of a copy of the subject ticket contract.

3. At all times material hereto, YORIEL AMPARO, resided in the Borough of the Bronx, New York City, New York, is a citizen of the United States and at all times was suri iuris.

City, New York, is a citizen of the United States and at all times was suri juris.

5.  At all times material hereto, JASMINE FUENTES, resided in the Borough of the Bronx, New York, New York, is a citizen of the United States and at all times was suri juris.

6. At all times material hereto, Defendant, CLASSICA, is a foreign profit corporation incorporated in the Bahamas, has a principal place of business in New York, and is authorized to do and does transact business in Florida.

7. CLASSICA, at all times material hereto, personally or through an agent:

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office and/or agency in this state and/or county;

b. Was engaged in substantial activity within this state; and/or

c. Operated vessels in the waters of this state; and/or

d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181, or 48.193; and/or

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and/or

f. The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Grand Classica.*

8. At all times material hereto, CLASSICA owned, operated, maintained, managed and/or controlled the cruise ship *Grand Classica*.

9. CLASSICA is vicariously liable for the acts and/or omissions of its employees, agents, servants, and/or independent contractors through the doctrine of *respondeat superior*

United States.

11. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## ALLEGATIONS COMMON TO ALL COUNTS

12. The incident which is the subject of this action occurred on or about May 7, 2019, aboard the Defendant's ship, the Grand Classica, while in navigable waters.

13. At the time of the incident Plaintiffs occupied the status of a fare-paying passenger aboard the Grand Classica.

14. At all times material hereto, CLASSICA owned, operated, managed, maintained, and/or controlled the cruise vessel Grand Classica.

15. FUENTES, BURKS and AMPARO purchased tickets as passengers on the Grand Classica for a vacation cruise that boarded in Fort Lauderdale, Florida with a destination of Grand Bahama Island in the Bahamas.

16. FUENTES, BURKS and AMPARO and a friend named Desire Hill boarded the ship and went to their cabins to unpack and unwind.

17. Subsequently, FUENTES, BURKS, AMPARO and Desire Hill decided to go on deck to find something to eat.  They decided to order food at a ship diner called Bar and Grill.

18. The group found the service to be sub-standard and asked to see a supervisor because one of the waitresses insulted one of the group.

19. Instead of a supervisor coming to attend to the plaintiff's complaints, four security guards came to the plaintiffs table and told the plaintiffs to follow them.  The security guards escorted them to the manager's desk.  The manager on duty was not present and the security was told by other ship personnel to escort the plaintiffs to their rooms.

20. The plaintiffs along with Desire Hill and another couple that the group had befriended, all

21. Subsequently there was a banging at the cabin door.  Before the door could be answered by the group, security guards for the ship burst into the room without being allowed entrance or being granted permission to enter.

22. The security guards stated that they were receiving noise complaints.  The group responded that they were not playing loud music and asked the guards to leave.  AMPARO then took out his phone and began to record the guards.

23. One of the guards then demanded that AMAPARO stop filming them.  When AMPARO did not stop filming one of the guards lunged at AMPARO and punched him in the face.

24. Another guard picked up a chair and flung it at BURKS and another guard took a chair and hit AMPARO.

25. FUENTES tried to intervene and she was punched in the face more than once.  The guards continued to beat BURKS and AMAPRO with fists and chairs. AMPARO and BURKS were able to push the guards out the room and closed the door.

26. AMPARO, BURKS and FUENTES were injured by the guard's attack on them and wanted no further confrontation with the security guards.  They told the guards that they would come out the cabin and surrender to them in order to end the current standoff.

27. Once the plaintiffs opened the cabin door, the guards handcuffed BURKS and AMPARO behind their backs.  When the guards secured AMPARO and BURKS they began beating them while AMPARO and BURKS were handcuffed behind their backs. FUENTES tried to intervene to stop the guards and was again punched in the face.  BURKS was knocked unconscious.

28. The security guards subdued FUENTES and began to search her in an inappropriate manner in the hallway.  The male security guards grabbed her in her breast and vaginal area pretending to search her but in fact were sexually assaulting her.

29. Then AMPARO, BURKS and FUENTES were taken to a laundry room with two beds in it.

FUENTES was again groped in the breast and vaginal area. FUENTES began to have an anxiety attack and she fainted.

30. The security guards chained BURKS and AMPARO to a post in the room and their feet were shackled. BURKS regained consciousness chained in this room with AMPARO. Both BURKS and AMPARO could not move. A security officer and a person plaintiffs believe was the captain, came into the room and told AMPARO and BURKS that they would be held in that room until they reached the Bahamas.

31. BURKS and AMPARO were given no food for the entire journey to Grand Bahama. They were also not allowed to use the rest room and were forced to urinate on themselves. BURKS and AMPARO believe they were shackled in that manner for approximately 12 hours against their will.

32. During the 12-hour detention, security guards would come in the room and randomly beat AMPARO and BURKS. The person who plaintiffs believe was the ship's captain came in the room and told AMPARO and BURKS that they were "racist American pigs" that think they are better than everyone and that he was going to report them to the FBI.

33. After FUENTES fainted she was taken to a sick bay. She regained consciousness in the sick bay in a hospital bed.

34. FUENTES was escorted by security to a room that had a security guard in front. FUENTES asked why the guard was in front of her door and was told that she and her friends had assaulted a guard.

35. FUENTES was then escorted to her room and was told that AMPARO and BURKS had been arrested. Ship security, against her will, prevented FUENTES from leaving the room. FUENTES looked for her belongings including her phone and money and found none of her belongings were in her cabin where she left them.

of being escorted to AMPARO and BURKS, FUENTES was taken to a room much smaller then her cabin where she was forced to remain. All of FUENTES requests to see her friends and to get her phone back were denied.

37. BURKS and AMPARO remained shackled until the ship docked in the Bahamas. Once there a Bahamian official interviewed BURKS and AMPARO. The Bahamian official ordered the ship security to place BURKS and AMPARO in a more humane situation.

38. CLASSICA security tried to get the Bahamas authorities to charge AMPARO, BURKS, and FUENTES with crimes. The Bahamian officials refused to do so.

39. AMPARO and BURKS were then moved from the room where they were shackled to a room next to FUENTES. At that point the shackles were removed from AMPARO and BURKS.

40. Although, BURKS and AMPARO were in a room next to FUENTES they were unable to have contact. FUENTES began to once again have an anxiety attack and asked if she could speak to the captain. The captain arrived and told FUENTES that when they docked he would be reporting them to the FBI. The captain did allow FUENTES to be in a room with AMPARO to relieve her anxiety.

41. Once the boat docked in Florida BURKS, AMPARO and FUENTES were handcuffed and escorted to customs officials in front of the cruise ship passengers. The customs officials were given a false narrative by CLASSICA that it was plaintiffs that attacked the guards. CLASSICA employees were attempting to get U.S officials to criminally charge the plaintiffs for crimes committed against plaintiffs.

42. CLASSICA actively tried to cover up the assault, false imprisonment and battery of plaintiffs by falsely claiming that plaintiffs attacked ship security.

43. After the U.S. officials investigated the false complaints being made against plaintiffs, the plaintiffs were released.

44. The plaintiff's belongings were brought to them in bags. Upon searching through their belonging FUENTES discovered that $1,000.00 in cash was missing from her wallet; her promise ring was missing; and her gold diamond name chain was missing.

45. AMPARO discovered that he was missing $5,000.00 in cash; his Rolex watch; and an 18 karat gold chain.

46. CLASSICA employees stole the aforementioned items from the plaintiffs. The plaintiffs reported this to the officials at the dock and was told to handle it in another manner.

47. Once off the ship the plaintiffs called CLASSICA to complain about their treatment and the theft of their items. CLASSICA customer service left them on hold and did not respond to their concerns.

## COUNT I SEXUAL ASSAULT & BATTERY ON BEHALF OF FUENTES AGAINST CLASSICA

48. Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

49. On or about May 7, 2019, FUENTES was sexually assaulted and battered by CLASSICA security employees, servants or contractors who deliberately battered the private areas of FUENTES.

50. The sexual battery occurred during the contractual period of plaintiff's passenger ticket and occurred while CLASSICA security employees were acting within the scope of their employment or performing their duties or responsibilities as a member of CLASSICA's crew.

51. FUENTES never consented to being sexually assaulted or battered or otherwise injured by CLASSICA's crew.

52. As crew members of CLASSICA the security employees owed a duty to FUENTES to protect and care for her safety. Instead, CLASSICA employees, deliberately, knowingly and intentionally

53. CLASSICA is responsible for and are strictly or vicariously liable for the acts or conduct of their respective employees, contractors, servants and or agents including the security personnel that committed the sexual assault and or battery.

54. As a direct and proximate result of the acts or conduct of defendants, their respective employees, agents, and/or servants, the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which are permanent and continuing in nature.

**WHEREFORE**, Plaintiffs respectfully requests this Court to award:

    A. Compensatory damages;

    B. Pain and suffering;

    C. Actual damages;

    D. Punitive damages;

    D. Award such other and further relief as this Honorable Court deems just and necessary.

## COUNT II BATTERY ON BEHALF OF AMPARO, BURKS & FUENTES AGAINST CLASSICA

55. Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

56. On or about May 7, 2019, AMPARO, BURKS & FUENTES, were beaten, kicked, punched and battered by CLASSICA crew members, security employees, servants, staff or contractors.

57. The battery of plaintiffs by CLASSICA crewmembers occurred during the contractual period of plaintiffs' passenger ticket, and/or occurred while the crew members/security personnel were

58. Plaintiffs never consented to being punched, kicked, battered and/or otherwise injured by defendant's crew members/security personnel.

59. As crew members/security personnel of CLASSICA, they owed a duty to protect and care for plaintiffs safety. They instead deliberately, knowingly and intentionally breached this duty by assaulting and battering the plaintiffs.

60. Defendant CLASSICA is responsible for and /or strictly or vicariously liable for the acts or conduct of their respective employees, servants, contractors and/or agents, including CLASSICA's security staff and crew members.

  **WHEREFORE**, Plaintiffs respectfully requests this Court to award:

   A. Compensatory damages;

   B. Pain and suffering;

   C. Actual damages;

   D. Punitive damages;

   D. Award such other and further relief as this Honorable Court deems just and necessary.

## COUNT III FALSE IMPRISONMENT ON BEHALF OF AMPARO, BURKS & FUENTES AGAINST CLASSICA

61. Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

62. On or about May 7, 2019, plaintiffs were forced to stay in cabins and/or laundry rooms against their will by CLASSICA security personnel, crew members, servants or contractors.

63. Plaintiffs were falsely accused of committing a battery against CLASSICA employees and said employees restricted the movement of AMPARO & BURKS by chaining them hand and foot in a laundry room and refusing them food and the basic necessities such as access to a bathroom.

64. FUENTES was kept in a cabin with security personnel restricting her movement and not allowing her to move freely in the ship against her will.

65. This detention of the plaintiffs physically deprived them of their freedom and liberty and restrained them in their movements.

66. The Plaintiffs did not consent to the aforementioned actions of CLASSICA crewmembers, employees, security personnel, contractors and/or servants and these actions were against the will of the Plaintiffs.

67. The crew members' restraint of plaintiffs, was unlawful and unreasonable in that it was not based upon lawfully issued process of Court or law and CLASSICA had no valid basis to detain the plaintiffs.

**WHEREFORE**, Plaintiffs respectfully requests this Court to award:

A. Compensatory damages;

B. Pain and suffering;

C. Actual damages;

D. Punitive damages;

E. Award such other and further relief as this Honorable Court deems just and necessary

**COUNT IV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ON BEHALF OF AMPARO, BURKS &FUENTES AGAINST CLASSICA**

68. Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

69. On or about May 7, 2019, the plaintiffs were battered, beaten, handcuffed, chained and in the case of FUENTES, sexually assaulted by crew members, security personnel, servants, contractors or employees of CLASSICA.

70. The aforementioned intentional batteries and assaults occurred during the contractual period of plaintiffs' passenger ticket, and/or occurred while defendant CLASSICA crew members, security personnel, servants, contractors or employees were acting within the scope of their employment or performing their duties and responsibilities as a member of the vessel's crew.

71. Plaintiffs never consented to being battered, beaten, handcuffed, chained or sexually assaulted by defendant CLASSICA's employees, crew members, security personnel, servants, contractors or employees.

72. In beating, battering, handcuffing, chaining or sexually assaulting plaintiffs, CLASSICA's employees, crew members, security personnel, servants, or contractors engaged in intentional or reckless behavior that was extreme, shocking and outrageous.

73. Defendant CLASSICA is responsible for and /or strictly or vicariously liable for the acts or conduct of their respective employees, servants contractors and/or agents, including CLASSICA's security staff and crew members.

74. As a direct and proximate result of the acts or conduct of defendant, their respective employees, agents, contractors and/or servants, the plaintiffs sustained physical and psychological injuries to their mind and body, many of which are permanent and continuing in nature; they have incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and they have incurred medical expenses for the care and treatment of their injuries, many of which are permanent and continuing in nature.

  **WHEREFORE**, Plaintiffs respectfully requests this Court to award:

   A. Compensatory damages;

   B. Pain and suffering;

   C. Actual damages;

necessary.

## COUNT V NEGLIGENCE ON BEHALF OF AMPARO, BURKS &FUENTES AGAINST CLASSICA

75.     Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

76. Defendant CLASSICA owed duties of care to the plaintiffs as passengers of CLASSICA.

77.  CLASSICA breached such duties and were negligent insofar as they respectively failed to exercise reasonable care under the circumstances in the following particulars:

    a.  In failing to properly control, supervise, restrict and/or direct its employee's servants and/or agents, or security personnel.

    b.  In failing to provide property security measures and/or personnel for the protection of its passengers, including the plaintiffs.

    c.  in failing to take reasonable precautions and safety measures for the safety of its passengers.

    d.  in failing to exercise the necessary and reasonable care owed to its passengers for the sexual assaults, assaults and batteries that could be committed by its own security staff.

    e.  in failing to warn plaintiffs or any other passengers of the threat or danger of sexual assault, assault and batteries by CLASSICA's own employees or security staff.

    f.  CLASSICA was obligated to warn the plaintiffs of such real and potential dangers and threats to their safety during the subject cruise.

and/or guidelines regarding the assault and battery of passengers by its own employees.

78. As a direct and proximate result of aforementioned negligent acts or conduct of the defendant CLASSICA, the plaintiffs have suffered physical pain and suffering, mental anguish, personal inconvenience, loss of the capacity for the enjoyment of life humiliation and embarrassment. Plaintiff has also incurred medical expenses for the care and treatment of their injuries, many of which injuries are permanent or continuing in nature.

    **WHEREFORE**, Plaintiffs respectfully requests this Court to award:

        A. Compensatory damages;

        B. Pain and suffering;

        C. Actual damages;

        D. Punitive damages;

        D. Award such other and further relief as this Honorable Court deems just and necessary.

## **COUNT VI CIVIL THEFT ON BEHALF OF AMPARO &FUENTES AGAINST CLASSICA**

79. Plaintiff repeats and reiterates the allegations contained in paragraphs 12-47 above as if fully set forth herein.

80. On or about May 7, 2019, members, employees, servants, and/or contractors of defendant CLASSICA, knowingly procured and stole the personal property of AMPARO and FUENTES without their consent, by taking and exercising control over the personal property of AMPARO and FUENTES.

81. The security personnel procured and did not return a Rolex watch worth approximately $7,000.00; a gold chain worth approximately $5,000.00 and $5,000.00 in cash from AMPARO.

82. The security personnel procured and did not return a gold chain worth approximately $700.00; a promise ring worth approximately $700.00 and cash of $1,000.00 from FUENTES.

83. The security personnel obtained the personal property of AMPARO and FUENTES in violation of Florida Statutes 772.11 and 812.014(a) with intent to personally profit from the property of AMPARO and FUENTES in violation of Florida law.

**WHEREFORE**, Plaintiffs respectfully requests this Court to award:

    A. Compensatory damages;

    B. Actual damages;

    D. Treble damages pursuant to F.S. 772.11;

    D. Award such other and further relief as this Honorable Court deems just and necessary.

Plaintiffs demand trial by jury on all issues so triable.

Respectfully Submitted,

s/Gregory A. Samms, Esq.
Gregory A. Samms, Esq.
Florida Bar No. 438863
113 Almeria Avenue
Coral Gables, Florida
(786) 953-5802 phone
(786) 513-3191 fax
sammslaw@gmail.com