UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60896-RAR

**YORIEL AMPARO**, *et al.*,

    Plaintiffs,

v.

**CLASSICA CRUISE OPERATOR LTD., INC.**,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court on Defendant Classica Cruise Operator, Ltd., Inc.'s ("Classica") Motion for Summary Judgment on Counts III-VI [ECF No. 39] ("Motion").[1] The Court has considered the Motion, all related filings, and is otherwise fully advised. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [ECF No. 39] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**BACKGROUND**

This is a personal injury action arising from an incident taking place aboard the Grand Classica cruise ship while in navigable waters between Florida and the Commonwealth of the Bahamas. [ECF No. 1] ("Complaint") at ¶ 13. Plaintiffs Yoriel Amparo, Tevin Burks, and Jasmine Fuentes purchased tickets and boarded the vessel owned and operated by Classica on May 7, 2019.

---

[1] Defendant's Motion also included a request to strike Plaintiffs' demand for punitive damages associated with Counts I, II, III, and V ("Motion to Strike"). The Court will address Defendant's incorporated Motion to Strike in a separate order.

*Id*. On the first night of their journey, an altercation between Plaintiffs and a cruise ship employee at a restaurant led to a subsequent altercation between Plaintiffs and Classica's security team. *Id*. at ¶¶ 17-41. Following that altercation, Plaintiffs were escorted to their room on board the ship. *Id*. Later that evening, Plaintiffs had a second encounter with the security team that ultimately resulted in their detention for the remainder of the cruise. *Id*.

While Classica has submitted a video depicting both the initial dispute with the security team that led to Plaintiffs being escorted to their room, and the beginning of the second encounter that ultimately resulted in Plaintiffs' detention, the camera appears to fall off the body of the security team member during the beginning of a physical altercation between Plaintiffs and the Classica security team. *See* [ECF No. 38-E] ("Video #2") at 5:12; [ECF No. 38] ("Defendant's Statement of Material Facts" or "DSOMF"). Further, there is no video depicting the events following the removal of Plaintiffs from their cabin or what transpired during their detention. *See generally* DSOMF.

The remaining facts are in dispute. Plaintiffs allege that after they returned to their room, security guards burst in without permission and confronted Plaintiffs regarding a noise complaint they had received. Compl. at ¶¶ 21-22. Plaintiffs further allege that after Plaintiff Amparo began filming the altercation—and after he was instructed to stop recording by a Classica employee and subsequently refused—he was struck in the face by a Classica employee. *Id*. at ¶ 23. Plaintiffs claim that during this altercation, they were punched and beat with objects to the point that Plaintiff Burks was ultimately knocked unconscious. *Id*. at ¶ 27. Following this exchange, Plaintiffs allege that Classica employees shackled Plaintiffs Amparo and Burks and held them in a laundry room for approximately 12 hours without food or the ability to use a bathroom. *Id*. at ¶¶ 27-31. Plaintiffs allege that for the remainder of the cruise after reaching the Bahamas, their shackles were removed,

and they were confined to a stateroom. *Id*. at ¶¶ 37-41. Further, Plaintiffs aver that during the altercation, Plaintiff Fuentes was sexually assaulted by a Classica employee while the employee was conducting a search of her person, leading to a panic attack and causing her to eventually lose consciousness. *Id*. at ¶ 28. Lastly, Plaintiffs allege that Classica employees took approximately $6,000 in cash and four pieces of jewelry while Plaintiffs were detained by Classica employees. *Id*. at ¶¶ 44-45.

Classica has put forth a much different account of the events. Classica claims that the altercation began after Plaintiffs threw water on and attempted to push a waitress over a dispute stemming from Plaintiffs' refusal to pay gratuity. DSOMF at ¶¶ 6-10. During the confrontation with security, Classica alleges that Plaintiffs engaged in a profanity and threat ridden exchange with security guards after which they were escorted to their room. *Id*. at ¶¶ 12-16. After returning to their room, Classica alleges that Plaintiffs disabled the smoke detector, began loudly playing music, and smoked marijuana. *Id*. at ¶¶ 17-22. Classica claims that their security guards entered Plaintiffs' room and confronted them. *Id*. Once the security team's efforts to calm Plaintiffs down ultimately failed, and after receiving permission from the ship's captain, the security team attempted to detain Plaintiffs. *Id*. at ¶¶ 25-26. Classica claims that during this attempt, Plaintiffs attacked the security guards. *Id*. at ¶¶ 27-31. Once detained in the laundry room, Classica alleges that Plaintiffs Amparo and Burks continued to act belligerently and threaten crew members, leading to their detention in the laundry room until the ship reached the Bahamas and in a crew cabin during the return trip. *Id*. at ¶¶ 32-38. Classica states that this detention was a result of their security team's belief that Plaintiffs were a danger to themselves and others and that the detention was permitted under the Cruise Ticket Contract. *See* Mot. at 2.

In their Complaint, Plaintiffs allege six (6) counts against Classica: Sexual Assault & Battery (Count I); Battery (Count II); False Imprisonment (Count III); Intentional Infliction of Emotional Distress (Count IV); Negligence (Count V); and Civil Theft (Count VI). In its Motion for Summary Judgment, Classica challenges Counts III, IV, V, and VI as a matter of law.

## **LEGAL STANDARD**

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to the non-moving parties, there is evidence on which a jury could reasonably find a verdict in their favor. *See Anderson*, 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225; *Allen*, 121 F.3d at 646.

"Partial summary judgment is a disposition of less than the whole action and serves as a useful tool to streamline litigation by establishing certain issues before trial where there is no genuine issue of material fact." *S.E.C. v. Bankatlantic Bancorp, Inc.*, 661 F. App'x 629, 630 n.1

(11th Cir. 2016) (citing Fed. R. Civ. P. 56(d) advisory committee's note to 1946 amendment). When a court grants partial summary judgment, the remaining count or counts are preserved for trial. *Id*.

## ANALYSIS

### I. Classica is entitled to summary judgment on Plaintiffs' claim for intentional infliction of emotional distress.

To succeed on a claim for intentional infliction of emotional distress under Florida law, a plaintiff must prove: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). "The viability of a claim for intentional infliction of emotional distress is highly fact-dependent and turns on the sum of the allegations in the specific case at bar." *Johnson v. Thigpen*, 788 So. 2d 410, 413 (Fla. 1st DCA 2001). The second element—the requirement of "outrageous" conduct—"is measured by an objective test." *Hamon v. Casa Casuarina, LLC*, No. 10-20457, 2010 WL 11442754, at *2 (S.D. Fla. June 18, 2010) (citing *Vernon v. Med. Mgmt. Assoc. of Margate, Inc.*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996)). Additionally, "the question of what constitutes outrageous conduct is a question of law to be resolved by the court, not a question of fact for a jury." *Id*.

To meet the objective outrageousness standard, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins.*, 467 So. 2d at 278–79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D.

Fla. 2012) (internal quotation marks omitted). Even in cases involving groping that amounted to tortious behavior, "courts in Florida and the Eleventh Circuit have been extremely reticent to find sexually harassing conduct to be sufficiently outrageous to support a claim for intentional infliction of emotional distress." *Merrick v. Radisson Hotels Int'l, Inc.*, No. 06CV01591, 2007 WL 1576361, at *4 (M.D. Fla. 2007).

Plaintiffs allege that Classica is responsible for the intentional infliction of emotional distress by "beating, battering, handcuffing, [and] chaining" Plaintiffs and by subjecting Plaintiff Fuentes to inappropriate touching during a search for contraband prior to being detained. Compl. at ¶ 72. Classica counters that, even in the light most favorable to Plaintiffs, the security team's alleged conduct does not rise to the level of outrageousness required to succeed on a claim for intentional infliction of emotional distress. Mot. at 13-16. The Court agrees with Classica. Incidents of inappropriate touching, battery, and false imprisonment on a cruise ship—though wholly disturbing in nature—are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Garcia*, 838 F. Supp. 2d at 1339 (quoting *Metro. Life Ins.*, 467 So. 2d at 278–79).

For example, the court in *Garcia*, faced with strikingly similar allegations, found no outrageous conduct and dismissed plaintiff's intentional infliction of emotional distress claim where crewmembers assaulted and prevented plaintiff from leaving her room for a period of time. *Id.* Similarly, in *York v. Commodore Cruise Line, Ltd.*, the Court declined to find evidence of a cabin steward's attempted rape of a passenger sufficiently outrageous under Florida law to support a claim for intentional infliction of emotional distress. 863 F. Supp. 159, 165 (S.D.N.Y. 1994). These examples illustrate that the allegations set forth here fall short of the extremely high standard

required to establish a claim for intentional infliction of emotional distress. *See, e.g., Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (finding failure to allege sufficiently outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306–07 (S.D. Fla. 1998) (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle).

Accordingly, Classica's Motion for summary judgment on Count IV is **GRANTED**.

### II.  Classica is entitled to summary judgment on Plaintiffs' negligence claim.

To succeed on a claim for negligence under Florida law, a plaintiff must prove "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). In the maritime context, the Supreme Court has held that a "shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). "[T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Further, to give rise to liability, the risk-creating condition must be "substantially similar to the occurrence in question[.]" *Taiariol v. MSC Crociere S.A.*, 677 F. App'x 599, 601 (11th Cir. 2017)

It is well settled under Florida law that "there is no such thing as the 'negligent' commission of an 'intentional' tort." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996).

Accordingly, when Federal courts have found themselves tasked with determining whether intentional torts committed by a Defendant's employees give rise to a claim for negligence, they have consistently held that "it is improper to state a claim for negligence premised solely on the defendant's alleged commission of an intentional tort." *See, e.g.*, *Garcia*, 838 F. Supp. 2d 1334 at 1337. Importantly, the Eleventh Circuit has further explained that "Florida tort law imposes strict liability on cruise lines for crew member assaults on their passengers [and] that as to this issue Florida law is consistent with federal maritime tort law." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 915–16 (11th Cir. 2004). Thus, it is impossible for a defendant to be "negligently liable for the commission of the same intentional tort for which [d]efendant is strictly liable." *Garcia*, 838 F. Supp. at 1337.

As a threshold matter, it is undisputed that battery, civil theft, intentional infliction of emotional distress, false imprisonment, and sexual assault are intentional torts under Florida law. *See Sullivan v. Atl. Fed. Sav. & Loan Ass'n.*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984) (battery); *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 (Fla. 2004) (civil theft); *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (intentional infliction of emotional distress); *Hill v. Hill*, 388 So. 2d 625, 626 (Fla 1st DCA 1980) (false imprisonment); *Doe v. Celebrity Cruises, Inc.*, 389 F. Supp. 3d 1109, 1116 (S.D. Fla. 2019) (sexual assault). Despite being confusingly drafted, Plaintiffs' Complaint as it relates to negligence essentially lays out three allegations: (1) Classica employees committed intentional torts against Plaintiffs; (2) Classica failed to prevent these intentional torts from occurring; and (3) Classica failed to warn Plaintiffs of the risk of these intentional torts occurring. The first allegation clearly does not give rise to a claim of negligence because "there is no such thing as the 'negligent' commission of an 'intentional' tort." *Sanders*, 672 So. 2d at 48. The second allegation is similarly deficient; if

simply failing to prevent an intentional tort from occurring amounted to negligence, all employers would be liable for the intentional torts committed by their employees.

Although the third allegation—that Classica failed to warn Plaintiffs of the risk of intentional torts being committed against them—could potentially give rise to a claim for negligence, Plaintiffs have failed to put forth any evidence whatsoever that Classica "had actual or constructive notice" of the risk that these intentional torts might take place. There is not a scintilla of evidence that anything similar to Plaintiffs' claims for battery, false imprisonment, civil theft, or intentional infliction of emotional distress had ever taken place aboard a Classica vessel. Regarding the claim of sexual assault, Plaintiffs point to the Cruise Vessel Security and Safety Act (CVSSA) Statistical Compilation, which states that Bahama Paradise Cruise Line (Classica's parent company) reported one sexual assault in the period between January 1, 2018 and March 31, 2018. [ECF No. 47] ("Response") at Exhibit 7. However, Plaintiffs ignore the requirement that the risk-creating condition must be "substantially similar" to the condition in question. Not only have Plaintiffs failed to advance any evidence that could lead a reasonable jury to conclude the event reported in Classica's CVSSA disclosure was substantially similar to the conduct alleged here, but the disclosure also patently states that the assault was not committed by a crew member. Thus, the third allegation also fails.

Accordingly, Classica's Motion for summary judgment on Count V is **GRANTED**.

**III.  Classica is entitled to summary judgment on Plaintiffs' civil theft claim.**

Under Florida Law, a plaintiff alleging civil theft must prove a violation of Florida's criminal theft statute. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). Civil theft requires proof that a defendant "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [Plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [Plaintiff] of its right to or a benefit from the property or (b) appropriate the property

to [Defendant's] own use or to the use of any person not entitled to the property." *Id*. (citing Fla. Stat. §§ 772.11 (providing civil remedy for theft or exploitation), 812.014(1) (criminal theft statute)). To succeed "the claimant must prove the statutory elements of theft, as well as criminal intent." *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000). To prove criminal or felonious intent, a "defendant must have the specific intent to commit the theft at the time of, or prior to, the commission of the act of taking." *Leggett v. State*, 237 So. 3d 1144, 1146 (Fla. 3d DCA 2018).

Here, there is simply no evidence to indicate that Classica or its employees obtained Plaintiffs' property with felonious intent—or obtained their property at all—that could lead a reasonable jury to find for Plaintiff on their claim for civil theft. As evidence of Classica's alleged criminal intent, Plaintiffs claim "[t]he security team showed animosity toward the plaintiffs like claiming that the plaintiffs were racist, by calling them racist pigs, calling them the 'N' word, by beating them, imprisoning them, and continually humiliating them." Resp. at 16. Plaintiffs maintain that these allegations are "more than sufficient intent to show the animosity that the security staff had towards the plaintiffs." *Id*. But "animosity" has no relation to the purported civil theft of the items at issue. As Plaintiffs point out in their Response, the Florida Supreme Court requires criminal "intent to deprive"—not merely general animosity towards the Plaintiffs. *See id*. (citing *State v. Dunmann*, 427 So. 2d 166 (Fla. 1983)). Plaintiffs fail to allege with any specificity when or how Defendant obtained their property, let alone that members of the security team had the criminal intent to do so.

Further, even if criminal intent were somehow alleged, it would be impossible for a reasonable jury to award damages related to this claim because no evidence has been provided as to the value of the items. While Plaintiff Amparo claims that a Rolex watch worth $7,000.00 was

stolen along with $5,000.00 in cash, he was unable to produce a receipt for the watch, an ATM receipt or bank statement indicating that he had withdrawn such an amount of cash, or even remember the store where he purchased his jewelry. Similarly, while Plaintiff Fuentes testified that $700.00 was taken from her wallet, and jewelry appraised at $800.00 was also taken, no evidence outside of Plaintiffs' testimony has been presented to validate that these items were stolen, appraised at such values, or even that they existed. *See Winters v. Mulholland*, 33 So. 3d 54, 59 (Fla. 2d DCA 2010) ("As the plaintiff seeking damages, Mulholland had the burden to present evidence to prove each of the elements of his statutory civil theft claim[.]")

Accordingly, Classica's Motion for summary judgment on Count VI is **GRANTED**.

### IV. Issues of material fact exist regarding Plaintiffs' false imprisonment claim.

Under Florida law, "false imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." *Archer v. City of Winter Haven*, 846 F. App'x 759, 763 (11th Cir. 2021) (citing *Johnson v. Weiner*, 19 So. 2d 699, 700 (1944)) (internal quotation marks omitted). A claim for false imprisonment requires a plaintiff to prove "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' . . . 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006)).

Classica points to the Cruise Ticket Contract to support the proposition that they had legal authority to restrain Plaintiffs. *See* Mot. at 4-7. While the Contract does give Classica the right to "confine to a stateroom, any Passenger who . . . may endanger themselves or others, or become obnoxious to others[,]" *id.*, there are a number of genuine issues of fact which could lead a reasonable jury to conclude that Classica falsely imprisoned Plaintiffs. Most notably are the

disputed circumstances under which the detention arose. While Plaintiffs allege they were not smoking marijuana and were attacked by the security guards, Classica alleges the exact opposite. Classica further alleges that Plaintiffs were a danger to themselves and others because they disabled the smoke detector in their stateroom.

While the Court has reviewed the video that Classica cites to support their version of events, the video does not make clear whether Plaintiffs struck the Classica security team member initially or *vice versa* and does not depict Plaintiffs smoking marijuana or disabling the smoke detector to do so. It is clearly in dispute whether Classica had the authority to detain Plaintiffs under the terms of the Cruise Ticket Contract and whether they had the legal authority to do so.

Importantly, even if a jury were to determine that Classica had legal authority to initially detain Plaintiffs pursuant to the Cruise Ticket Contract and Plaintiffs' actions, simply finding the detention warranted is not the end of the inquiry. A jury could nevertheless find that based on the disputed facts, the manner, length, or conditions of confinement were "unreasonable and unwarranted under the circumstances." *Harder*, 174 So. 3d at 530. While the Cruise Ticket Contract gives Classica the right to confine a passenger to a stateroom, *see* Mot. at 4-7, Plaintiffs allege they were shackled and placed in a laundry room where they were not fed, beaten, and forced to urinate on themselves. Further, it is undisputed that Plaintiffs were detained for the remainder of the vessel's journey to the Bahamas and during its return to Florida. Thus, even if the detention was initially warranted, a reasonable jury could find that the detention became unreasonable or unwarranted at some point thereafter.

Accordingly, Classica's Motion for summary judgment on Count III is **DENIED**.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [ECF No. 39] is **GRANTED** with respect to Counts IV, V, and VI and **DENIED** with respect to Count III.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 26th day of October, 2021.

                                                **RODOLFO A. RUIZ II**
                                                **UNITED STATES DISTRICT JUDGE**

cc:   counsel of record